In the Matter of a GRAND JURY SUBPOENA DUCES TECUM.
No. 11–188.

United States District Court,
S. D. New York.

Feb. 19, 1975.

Paul J. Curran, U. S. Atty., S. D. N. Y., United States Courthouse, New York City, by Elliot G. Sagor, Asst. U. S.

Atty.; David A. Ross, Samuel Krieger, of counsel, for the Securities and Exchange Commission.

Lord, Day & Lord, by John Castles, Norman H. Seidler, New York City, for Hogan & Hartson.

Williams, Connolly & Califano, by John G. Kester, Francis X. Grossi, Jr., Robert L. Weinberg, Washington, D. C., for Robert L. Vesco.

## OPINION

ROBERT L. CARTER, District Judge.

A Special Grand Jury began some time in or about July, 1974, an investigation into the activities of the International Controls Corp. (ICC) and Investors Overseas Services (IOS). In the course of the investigation subpoenas duces tecum, dated July 9, 1974, and August 15, 1974,[1] were served on Hogan and Hartson (H&H), a law firm with offices at 815 Connecticut Avenue, N.W., Washington, D. C. H&H had been corporate and litigation counsel for ICC beginning in 1966. It continued as corporate counsel until November 22, 1972, and as litigation counsel until March 16, 1973.

In 1971, the Securities and Exchange Commission undertook an investigation of ICC and certain of its officers in respect of their dealings with IOS. ICC and Robert Vesco were named as respondents. Between 1966 and 1973, Vesco held various executive positions with ICC—director, president, chief executive officer and chairman of the board. The SEC investigation extended over a period of approximately twenty months and focused primarily on ICC's and Vesco's relationships and dealings with IOS. H&H represented Vesco, as a respondent, as well as ICC, in the SEC investigation. H&H also represented certain other ICC directors, officers and employees of ICC when these persons were called to testify as witnesses in the course of the SEC investigation. All of

H&H's legal fees for these various representations were paid by ICC.

The SEC investigation resulted in a civil action being brought in this court by SEC against ICC, Vesco and various other ICC directors, officers and employees. H&H represented ICC in this litigation, but Vesco was represented by other counsel. The civil suit in respect of ICC terminated on March 16, 1973, in a consent decree providing for permanent injunction against ICC and the appointment of Special Counsel and Directors. The ICC also agreed to waive "any attorney-client privilege directly or indirectly relating to the issues in this action."

### The Grand Jury Subpoenas

The Grand Jury subpoenas, insofar as relevant to this controversy, required H&H to produce in the firm's possession "[a]ll original or file copy records, memoranda and correspondence relating to the collection, review, delivery and production of all documents during 1971 and 1972 in connection with the SEC's investigation" of ICC and Vesco.

### Assertion of Attorney-Client Privilege

On March 20, 1973, four days after the consent decree as to ICC was agreed upon, Arthur Liman, a member of the New York law firm of Paul, Weiss, Rifkind, Wharton & Garrison, Vesco's counsel in the civil action brought by SEC against Vesco and others, advised H&H that Vesco had not waived his attorney-client privilege in respect of communications between H&H and Vesco.

In compliance with the July 9 subpoena, H&H produced a great mass of documents. On August 16, 1974, H&H advised the United States Attorney by letter that certain of the documents ordered produced were being withheld because they were arguably within the attorney-client privilege as to those persons whom H&H had represented in the SEC investigation who, unlike ICC, had not waived the attorney-client privilege.

---

1. Since then a third subpoena has issued, but none of its provisions are involved here.

On September 30, 1974, H&H advised Liman of the Grand Jury subpoenas and that it had withheld various documents which in the firm's judgment were arguably covered by the attorney-client privilege pursuant to H&H's representation of Vesco in the SEC investigation. Copies of the documents withheld were enclosed in the September 30th letter.

On October 11, 1974, H&H were notified by Williams, Connolly & Califano (WCC), a law firm in Washington, D. C. and currently counsel for Vesco, that Vesco asserted the attorney-client privilege, as well as any other available privilege, in respect of each and every document withheld. In addition, WCC requested H&H not to respond further to the Grand Jury subpoenas until WCC had been afforded the opportunity to review the documents, determine whether production was in fact required by the subpoenas and if required, to determine whether the documents could be withheld pursuant to the attorney-client privilege and any other claims Vesco might wish to assert.

H&H, taking the view that in respect of a subpoena addressed to it, that the firm could not delegate responsibility to others to decide what should be produced or what was protected under the attorney-client privilege, responded negatively to WCC's request. H&H was then advised personally by Vesco to submit all subpoenaed documents to WCC prior to producing them for Grand Jury scrutiny.

*The Instant Proceedings*

On December 20, 1974, this proceeding, to require H&H to produce for grand jury use the documents which H&H had withheld, was instituted. The documents were marked as Exhibits 1–6, and surrendered to the custody of the court for its *in camera* inspection.[2] The matter was set down for hearing on January 3, 1975, and the parties were ordered to advise WCC of the January 3rd hearing date so that Vesco's counsel could be present to argue if it wished on Vesco's behalf.

At the January 3rd hearing, the government took the position that WCC had no right to be present and that its presence compromised the concept of secrecy surrounding a grand jury proceeding. It was conceded that this argument was purely a technical one, since the contents of the documents in question were not being discussed—copies of which WCC had in any event—and the sole function to be served by WCC at the hearing was to shed whatever light it could on the claims Vesco was making in respect of his right to have the documents in dispute withheld from grand jury perusal.

*Discussion*

■ WCC asserts a right, as Vesco's present counsel, to determine what documents H&H should produce or withhold. It asserts the attorney-client privilege on Vesco's behalf in respect of all the withheld documents, and Fourth and Fifth Amendment rights on Vesco's part to withhold the documents from compelled disclosure to the grand jury.

At the outset, especially in view of WCC's action in putting to the District of Columbia Bar Association the question of whether H&H's refusal to give the former final responsibility for determining whether to produce the documents called for in the subpoena and what to produce, constituted ethical professional conduct, it should be stated that H&H acted in the only appropriate manner it could have under the circumstances. If it had followed WCC's directions, it would have risked being held in contempt of court and to have had no justifiable excuse for its failure to comply with the subpoena. *See* Brown v. United States, 276 U.S. 134, 144, 48 S.Ct. 288, 72 L.Ed. 500 (1928); United States v. Kovel, 296 F.2d 918,

---

2. Present concern is with Exhibits 1–4 only. Exhibits 5–6 involve claims of lawyer work-product privilege. Counsel for H&H and counsel for the government are attempting to resolve their differences in that area without resort to the court.

924 (2d Cir. 1961). WCC is not under subpoena; H&H is. H&H was obligated to produce those documents subpoenaed which the firm was certain were not privileged, *see* NLRB v. Harvey, 349 F.2d 900 (4th Cir. 1965); assert the privilege on Vesco's behalf as to those documents the firm deemed arguably protected by the attorney-client privilege, Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 556 (2d Cir. 1967); Schwimmer v. United States, 232 F.2d 855, 863, cert. denied, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956); and turn documents in the latter category over to the court for its *in camera* inspection and determination whether as to those matters withheld the claimed privilege had merit.

██ It is undisputed that none of these documents were ever in Vesco's possession. The closest to such possession is that one of the documents is a letter from Vesco to a member of the H&H firm. Some of the documents are recorded conversations, or more accurately recorded summations of conversations with ˙Vesco. None of the documents were ever deposited by Vesco with H&H for safekeeping, and except for the letter and a few handwritten notes, none of the documents were ever prepared by Vesco. There is no bases, therefore, on which any asserted Fourth or Fifth Amendment rights of Vesco could conceivably attach to any of these documents, or be infringed by their production. *Cf.* Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); In re Horowitz, 482 F.2d 72 (2d Cir.), cert. denied, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973); United States v. Fisher, 500 F.2d 683 (3rd Cir. 1974) (en banc); United States v. Kasmir, 499 F.2d 444 (5th Cir. 1974).

██ That leaves only the attorney-client privilege, if any, which Vesco can validly assert and rely upon to keep any of these documents from the grand jury. That privilege does not encompass an inchoate right to withhold documents merely because an attorney-client relationship existed. *Cf.* United States v. Hodgson, 492 F.2d 1175, 1177 (10th Cir. 1974). Because the attorney-client privilege affords to a party the right to withhold information, thereby impeding an investigation, an administrative proceeding, or a trial in its search for truth, the privilege has been confined to a narrow and limited enclave. *See* Baird v. Koerner, 279 F.2d 623 (9th Cir. 1960); in re Horowitz, *supra.*[3]

 This is understandably so because a higher value must be placed on full disclosure. Therefore, although the policy underlying attorney-client privilege is given effect, the privilege is strictly limited in purpose and effect, and the party asserting the privilege has the burden of establishing every essential element of his claim. *See, e. g.,* United States v. United Shoe Machinery Corp., 89 F.Supp. 357 (D.Mass.1950). Absent confidentiality in purpose and intent, the privilege does not apply. *See* Securities and Exchange Commission v. First Security Bank of Utah, 447 F.2d 166, 167 (10th Cir. 1971), cert. denied, 404 U.S. 1038, 92 S.Ct. 710, 30 L.Ed.2d 729 (1972).

 It is clear that H&H's representation of Vesco as a respondent in the SEC investigation established a bona fide lawyer-client relationship in respect of that matter, *see* United States v. United Shoe Machinery Corp., *supra*, entitling Vesco to assert an attorney-client privilege in this proceeding. *See* McMann v. SEC, 87 F.2d 377 (2d Cir.),

---

3. For discussions of the privilege and its ramifications in various situations, *see* Davis, The Attorney-Client Privilege; The Remedy of Contempt, 41 Wis.L.Rev. 1192 (1968); Petersen, Attorney-Client Privilege in Internal Service Investigations, 54 Minn. L.Rev. 67 (1969); Simon, The Attorney-Client Privilege as Applied to Corporations, 65 Yale L.J. 953 (1956); *Notes*: The Lawyer Client Privilege: Its Application to Corporations, The Role of Ethics and Its Possible Curtailment, 56 Nw.U.L.Rev. 235 (1961); The Application in the Federal Courts of the Attorney-Client Privilege to the Corporation, 39 Fordham L.Rev. 281 (1970).

cert. denied, 301 U.S. 684, 57 S.Ct. 785, 81 L.Ed. 1342 (1937); In re Grand Jury Subpoena Duces Tecum, 358 F.Supp. 661, 662 (D.Md.1973). While ICC has properly waived any such privilege it might assert, Vesco, separate and apart from ICC, is entitled to assert the attorney-client privilege arising out of his relationship as client to H&H. *See* Continental Oil Co. v. United States, 330 F.2d 347 (9th Cir. 1964); *Note*, The Application in the Federal Courts of the Attorney-Client Privilege to the Corporation, 39 Fordham L.Rev. 281, 293 (1970).

 The fact that Vesco is now in flight from the United States does not bar him from asserting through counsel his attorney-client privilege thereby withholding from the grand jury certain of these papers. *See* Republic Gear Co., *supra*, 381 F.2d at 556. Molinaro v. New Jersey, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970) is inapposite. He is not a defendant in this proceeding. He need not be present to assert his claims. Concededly, his absence seriously hurts his cause.

 The corporation has waived its privilege and since a corporation can act only through its officers, Vesco cannot assert the attorney-client privilege as to matters involving the affairs of the ICC, or embracing his role or activities as an ICC officer or director.

Only he and H&H are capable of differentiating those papers which relate to representation of ICC, including Vesco as Chairman of the ICC Board, from those relating to representation of Vesco individually and apart from his corporate role. Indeed, perhaps only Vesco himself could precisely define and delineate that differentiation and thereby assert with specificity as to each document the bases on which the privilege is being claimed.

 I have examined all the documents listed in Exhibits 1–4 with the indicated yardsticks as guides. While I must confess that the task has been somewhat hampered since some of the documents are in handwriting almost as illegible as my own, and counsel have not spelled out as to specific documents, specific bases upon which the claim rests, I find no merit in the claim as to those documents in which Vesco was acting or communicating as an ICC official, where apparently no confidentiality was intended, and where the documents concerned business, as opposed to legal, advice.

 The documents are in four folders. Exhibit I consists of some 50 documents; Exhibit 2, 42 documents; Exhibit 3, 2 documents; and Exhibit 4, 7 documents. In Exhibit 1, #5 and 6, Robert Jeffers' (H&H attorney) handwritten notes dated April 21, 1971; #7, Jeffers' handwritten notes dated April 23, 1971; #8, letter dated April 25, 1971, from Vesco to Jeffers; #12, Jeffers' handwritten notes dated August 9, 1971; #18, a memorandum dated November 5, 1971; (While only para. 3 thereof seems clearly protected and there is doubt as to the other portions of the memorandum, I resolve the doubt in Vesco's favor as to the entire document); #32, Jeffers' memorandum dated March 7, 1971 to files; #45, draft letter from Vesco to Bradford Cook, the SEC Chairman, with handwritten notes; #47, letter of Sherwin J. Markman (H&H attorney) dated November 10, 1972, to Arthur Liman (Vesco attorney in SEC civil action in this court); #49, Vesco's undated notes to Sherwin Markman and #50, Jeffers' undated notes; are within the attorney-client privilege and accordingly are not within the reach of the grand jury subpoena.

In Exhibits #2, #3, Jeffers' handwritten notes dated April 21, 1971 (#5 in Exhibit 1); #4, Jeffers' handwritten notes of April 21, 1971 (#6 in Exhibit 1); #5, letter dated April 25, 1971, from Vesco to Jeffers (#8 in Exhibit 1); #7, Jeffers' memorandum to files dated June 24, 1971; #8, Jeffers' memorandum to files dated June 24, 1971; #9, Jeffers' handwritten notes dated July 28, 1971; #10, Jeffers' handwritten notes dated July 28, 1971; #14, Jeffers' handwritten notes dated August 9,

1971 (#12, Exhibit 1); #24, Jeffers' handwritten notes dated November 1, 1971; #25, memorandum dated November 5, 1971, from James Rosenbauer to files (#18, Exhibit 1); #42, Jeffers' undated handwritten notes (#50, Exhibit 1) are also protected from the reach of the grand jury subpoena by the attorney-client privilege.

In Exhibit 3, #1, memorandum dated October 1, 1971, from Kevin P. Charles (H&H attorney) to files, and #2 (another copy of #18, Exhibit 1 and #25, Exhibit 2), memorandum dated November 5, 1971, from Rosenbauer to files, are privileged. In Exhibit 4, no item is privileged. Except as indicated, all other documents will be made available for the grand jury.