**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Richard William LANDOF,**
**Defendant-Appellant.**

No. 77–3638.

United States Court of Appeals,
Ninth Circuit.

Oct. 26, 1978.

Rehearing and Rehearing En Banc
Denied Jan. 29, 1979.

---

Robert J. Valkevich (argued), San Francisco, Cal., for defendant-appellant.

Robert L. Dondero, Asst. U. S. Atty. (argued), San Francisco, Cal., for plaintiff-appellee.

Before TRASK and SNEED, Circuit Judges, and SKOPIL,* District Judge.

* Honorable Otto R. Skopil, Jr., United States District Judge for the District of Oregon, sitting by designation.

**38**

TRASK, Circuit Judge:

Appellant was found guilty of conspiracy to embezzle and misapply bank funds in connection with a check kiting scheme. He was charged in a grand jury indictment along with David Glassman on the conspiracy charge only (18 U.S.C. § 371). Glassman was also charged with wilfully and knowingly embezzling bank funds (18 U.S.C. § 656) and misapplying bank funds (18 U.S.C. § 371).

Before appellant's trial, Glassman pled guilty to violating 18 U.S.C. § 656 and to the conspiracy charge. Glassman became the chief prosecution witness against appellant. His testimony fully implicated appellant in the check kiting scheme.

According to Glassman's testimony, the check kite involved funds for a corporation called Pan American Tires, Inc., which Glassman and appellant had formed. At this time, Glassman was an operations officer for the Bank of California. Glassman would purchase cashier's checks from the Bank of California using insufficiently funded checks from the corporation's account at American Bank and Trust Co. The cashier's checks would then be deposited in the American Bank account to cover the cost of the cashier's checks. The scheme eventually cost the bank $675,000.

Since the checks from the American Bank used to purchase the cashier's checks were drawn on the corporate account, appellant had to sign them. But, as a defense, appellant claimed that Glassman handled all the financial dealings of the corporation while he only sold the tires.

Appellant testified in his own behalf and presented a corroborating witness in Richard Beserra, who served as the corporation's counsel. But, the jury apparently chose to believe Glassman's testimony and appellant was convicted.

Before this court, appellant argues that several evidentiary rulings made during the course of trial severely prejudiced his case, requiring that he be granted a new trial. He also alleges that the trial court judge improperly cross-examined Beserra.

The first evidentiary ruling appellant challenges involves the attorney-client privilege. The trial court allowed Glassman to testify as to a statement made by appellant during a meeting. Attending this meeting were Glassman, appellant, an attorney named Segura, and the corporation's attorney, Beserra. Segura was at the meeting to advise both Glassman and appellant about the pending check kiting investigation.

■ The statement appellant complains about is: "He said that he felt that he could also be arrested and charged." (R.T. 124). This was allowed despite strenuous opposition from appellant who asserted the attorney-client privilege.

The Federal Rules of Evidence provide that:

"[T]he privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed.R.Evid. 501.

The attorney-client privilege has been recognized under this rule. Its scope is determined by federal law. *United States v. Hodge and Zweig*, 548 F.2d 1347, 1353 (9th Cir. 1977). The burden of proving that the privilege applies is placed upon the party asserting the privilege. *United States v. Stern*, 511 F.2d 1364, 1367 (2d Cir. 1975).

■ To have the privilege apply, the party must prove that:

"(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived . . . ." 8 *Wigmore, Evidence* § 2292 (McNaughton Rev. 1961). *See United States v. Stern*, 511 F.2d at 1367–68; *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961).

The trial court here determined that appellant did not meet his burden because the communication was not made in confidence. The presence of Beserra as a third party was seen as destroying the privilege.

The mere presence of a third party at an attorney-client meeting does not necessarily destroy the privilege. *United States v. Kovel, supra; McCormick on Evidence,* § 91, 188–89 (2d ed. 1972); 8 *Wigmore, Evidence* § 2301 at 583. If, for example, Beserra was acting as an agent of appellant, the privilege would not necessarily be destroyed. Or, if Beserra was acting as an attorney, the privilege could be asserted.

But, appellant could not show to the trial court's satisfaction that Beserra was acting as an attorney or an agent at the meeting. There was sufficient evidence to support the trial court's conclusion. As a result, comments made at the meeting were not privileged and could be testified about.

Appellant's second evidentiary argument concerns the refreshing of Glassman's recollection from an FBI report prepared after an interview with Glassman. Appellant claims that use of the report was improper because it was not prepared by Glassman. But, the law is clear that recollection can be refreshed from documents made by persons other than the witness. *Nees v. SEC,* 414 F.2d 211, 217–18 (9th Cir. 1969); 3 *Wigmore, Evidence* §§ 758–59.

A third evidentiary ruling challenged by appellant involves the prosecution's use of evidence showing that he spent corporate funds for gambling. This was presented to rebut appellant's defense that he thought the extra transactions in the corporate account were special dealings of Glassman's using Glassman's own funds. Appellant claims that evidence of the use of proceeds of certain checks he wrote to the Reno Check Cashing Service was of little probative value and was highly prejudicial. But, the fact appellant wrote the checks on the corporate account to obtain money for personal purposes does rebut his defense. The evidence showed appellant's knowledge and was not improperly prejudicial.

Since none of the contested rulings has been found to be improper, no cumulative effect results in the finding of prejudice appellant urges.

Appellant alleges that the court's cross-examination of his key witness—Beserra— was prejudicially conducted. He argues that the judge singled out Beserra for this treatment, leaving the impression with the jury that the judge did not believe Beserra.

It is proper for the court to question witnesses in order to clarify questions and develop facts. As long as this is done in a nonprejudicial fashion, and the court does not become personally over-involved, it is proper. *See United States v. Sidman,* 470 F.2d 1158 (9th Cir.), *cert. denied,* 409 U.S. 1127, 93 S.Ct. 948, 35 L.Ed.2d 260 (1972); *McConney v. United States,* 421 F.2d 248 (9th Cir.), *cert. denied,* 400 U.S. 821, 91 S.Ct. 39, 27 L.Ed.2d 49 (1969).

A review of the court's examination of Beserra shows that the court was trying to clarify several matters including the number of meetings of the corporation that Beserra attended. (R.T. 692–901). Nothing the judge said suggested that he did not believe Beserra, or was becoming a partisan in the trial.

The conviction is AFFIRMED.