**In re Thomas D. CARTER and Diana M. Carter, dba the Carter Company, Debtor.**

**Curtis B. DANNING and James J. Joseph, Co-Trustees of Thomas D. Carter and Diana M. Carter, dba the Carter Company, Plaintiffs,**

v.

**James M. DONOVAN, an Individual dba Law Offices of James M. Donovan, John C. Saginaw, an Individual, dba Law Offices of John C. Saginaw, fdba Law Offices of Donovan & Saginaw, Defendants.**

Bankruptcy No. SA 83–05401 RP.
Adv. No. SA 85–0368 RP.

United States Bankruptcy Court, C.D. California.

July 9, 1986.

---

Michael Goldstein of Stutman, Treister & Glatt, Los Angeles, Cal., for co-trustees.

Alan G. Tippie of Sulmeyer, Kupetz, Baumann & Rothman, Los Angeles, Cal., for respondents.

**RALPH G. PAGTER, Bankruptcy Judge.**

The Co-trustees' motion to compel production of documents and answers to deposition questions came on regularly for hearing on April 21, 1986. Michael Goldstein appeared on behalf of movants. Alan Tippie appeared on behalf of respondents. At the conclusion of the hearing, the court held that the real party in interest, Thomas D. Carter ("Carter"), was entitled to respond to the motion, and that the Co-trustees were entitled to reply to Carter's response. Subsequent to receipt of Carter's response and the Co-trustees' reply, the matter was taken under submission on May 29, 1986. For the reasons stated below, Co-trustees' motion is DENIED.

## FACTS

The Carter Company, Tom Carter Enterprises, Inc., Huck's Holiday, Inc., and Tom Carter Enterprises, Las Vegas, Inc. filed their respective voluntary Chapter 11 petitions on December 8, 1983. Thomas and Diana Carter filed their joint voluntary Chapter 11 petition on December 9, 1983. Subsequent to consent by all debtors, the court appointed the Co-trustees on December 14, 1983.

Shortly after filings, all of the debtors requested and received thirty-day extensions to file schedules and statements of affairs. However, none of the debtors met the deadline. This ultimately resulted in a motion for sanctions, in each case, for failure to do so. On May 24, 1984 this court ordered the debtors to file schedules and statements of affairs, specifying that debtors were allowed to assert the Fifth Amendment regarding matters believed to be incriminating. On June 6, 1984, each debtor filed a statement asserting the Fifth Amendment as to all information required in the schedules and statement of affairs.

Due to the on-going criminal investigation of Carter, he filed a motion to dismiss all of the pending cases. The motions to dismiss were denied pursuant to an order entered January 28, 1985. In the interim period, schedules and statements of affairs were filed in the Tom Carter Enterprises, Tom Carter Enterprises-Las Vegas and Huck's Holiday cases. However, it appears that no schedules or statements of affairs have been filed in the Thomas and Diana Carter and Carter Company cases.

On May 1, 1984, respondents Donovan and Saginaw filed a statement, in each case, pursuant to Bankruptcy Rule 2016(b) indicating that they had received $50,000 from the debtor as a retainer and that the source of the funds was a loan to Carter. The statements further indicate that respondents received the retainer for representation of all of the related debtors.

Also on May 1, 1984, Mark Wray, Esq. of Helsing & Rockwell filed a Bankruptcy Rule 2016(b) statement indicating that he received a retainer of $10,000 for representation of the related debtors and that the source of the funds was a loan to Carter. Wray was authorized to be employed as counsel for the related debtors pursuant to orders entered October 9, 1984. Neither Donovan nor Saginaw has been authorized by this court to be employed as counsel for any of the related debtors.

The Statement of Affairs filed in *Tom Carter Enterprises, Inc.* indicates that debtor paid Donovan & Saginaw $37,584.85 and Harris & Donovan $58,614.05 respectively within one year of the filing. The Statement of Affairs filed in *Tom Carter-Las Vegas* indicates that debtor consulted Donovan & Saginaw, but paid no money to them within one year of the filing. The statement filed in *Huck's Holiday* indicates consultation only with Helsing & Rockwell, and no payments to or consultation with Donovan & Saginaw. Each of the statements was signed by Thomas D. Carter, in the appropriate representative capacity.

All of the cases were consolidated for purposes of administration pursuant to an order entered March 14, 1985. The *Tom and Diana Carter* and *Carter Company* cases were consolidated for all purposes on the same date.

On May 15, 1985, Co-trustees filed a turnover action against respondents James M. Donovan ("Donovan") and John C. Sagi-

naw ("Saginaw") seeking to recover $50,-000 paid to them prior to commencement of the above cases, as a retainer for legal services. Co-trustees allege that said sum is property of the estate and that respondents have not been employed as debtors' bankruptcy counsel. Respondents answered the complaint by admitting receipt of the $50,000, but denying all other material allegations of the complaint.

During the course of discovery, movants have sought production of all documents relating to the source of the funds and the nature of the services rendered to debtors. Co-trustees have also deposed respondent Donovan.

Defendants produced copies of their Case Service Records, time sheets, that purport to specify the dates that services were rendered and the amount of attorney time. These records also include a description of the services rendered. However, the copies produced were redacted so that such descriptions were blacked-out.

When Co-trustees deposed Donovan, he refused to answer any questions about the source of the funds or the nature of the services rendered and asserted the attorney-client privilege.

Carter has been charged with a total of seventy-four counts of grand theft and securities violations. His preliminary hearing recently commenced in state court, and is expected to last four to seven weeks. Carter in his response to the instant motion, raised the Fifth Amendment privilege against self-incrimination.

### DISCUSSION OF LAW

Respondents and Carter assert that the Fifth Amendment privilege against self-incrimination and the attorney-client privilege prevent disclosure of the requested information. Although the Fifth Amendment appears to be inapplicable, the attorney-client privilege will, if properly established, provide requisite protection.

### A. *The Fifth Amendment*

Amendment V to the United States Constitution provides: "No person ... shall be compelled in any criminal case to be a witness against himself...."

Respondents indicate that they served as counsel to Carter, both before and after filing of the bankruptcy petitions, and held a number of confidential discussions with Carter pertaining to his financial dealings. Carter indicates that he intends to raise his Fifth Amendment privilege in the state court proceedings and asserts the privilege herein regarding said discussions.

▮ Carter and respondents, on behalf of Carter, assert that requiring answers to the deposition questions and production of unexpurgated time sheets may result in disclosure of information helpful to the state prosecutor and a waiver of his Fifth Amendment rights regarding certain financial matters likely to be at-issue in state court.

Co-trustees respond that disclosure of the requested information, at least in context sought, does not violate the Fifth Amendment in that Carter, himself, is not being compelled to affirm the truth of any information disclosed. In other words, the discovery sought is not testimonial and therefore not covered by the privilege against self-incrimination.

The United States Supreme Court in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) held that production of tax records by an attorney will not violate his client's Fifth Amendment rights because the turnover of the records does not constitute compelled testimony by the clients.

The taxpayer's privilege under [the Fifth] amendment is not violated ... because enforcement against a taxpayer's lawyer would not 'compel' the taxpayer to do anything—and certainly would not compel him to be a 'witness' against himself.

[T]he taxpayers' Fifth Amendment privilege is therefore not violated by enforcement of the summonses directed toward their attorneys. This is true whether or not the Amendment would

have barred a subpoena directing the taxpayer to produce the documents while they were in his hands.

> .     .     .     .     .

[T]he Amendment protects a person from being compelled to be a witness against himself. Here the taxpayers retained any privilege they ever had not to be compelled to testify against themselves and not to be compelled to produce private papers in their possession. *This* personal privilege was in no way decreased by the transfer. It is simply that by reason of the transfer of the documents to the attorneys, those papers may be subpoenaed without compulsion on the taxpayer. The protection of the Fifth Amendment is therefore unavailable.

*Id.* 425 U.S. at 397–99, 96 S.Ct. at 1574–75 (emphasis in original). The court recently reaffirmed this holding in *Securities and Exchange Commission v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741–44, 104 S.Ct. 2720, 2725–26, 81 L.Ed.2d 615, 621–22 (1984). The *Fisher* decision appears to be directly on-point concerning Carter's Fifth Amendment rights herein. Therefore, the court concludes that the Fifth Amendment does not bar the requested discovery.

### B. *The Attorney Client Privilege*

The Court in *Fisher, supra*, held that the Fifth Amendment was inapplicable, but indicated that information in the hands of third parties might be protected by other sources, including the attorney-client privilege. *Fisher, supra*, 425 U.S. at 400, 96 S.Ct. at 1575–76. Although the Court in *Fisher* held that the attorney-client privilege did not apply, the nature of the information sought herein makes the instant case distinguishable from *Fisher*.

After acknowledging that the tax records in *Fisher* were a 'communication' between the attorneys and clients, the court went on to hold that the attorney-client privilege did not apply because the individual clients would not have been able to prevent production under the Fifth Amendment had they retained possession of the records because the records were not testimonial. *Fisher, supra*, 425 U.S. at 406–13, 96 S.Ct. at 1578–82.

The instant case does not concern records prepared by the individuals. Instead, it pertains to actual confidential statements made by Carter to his attorneys. The attorney-client privilege is designed to encourage clients to make full disclosure to their attorneys. *Fisher, supra*, 425 U.S. 403, 96 S.Ct. at 1577. Applying *Fisher* to the instant case would effectively abrogate the attorney-client privilege because revelation of conversations between an attorney and his client would not be testimonial per se.

Movants have not cited, nor has the court found any decisions by the Supreme Court, the Ninth Circuit or the Central District requiring revelation of confidential discussions between attorney and client. Each of the cases cited by movants pertains to documents in the hands of third parties. Moreover, since the Fifth Amendment protects an individual from being compelled to testify against himself or otherwise provide evidence of a testimonial or *communicative* nature, *Schmerber v. California*, 384 U.S. 757, 761, 86 S.Ct. 1826, 1830–31, 16 L.Ed.2d 908 (1966), the attorney-client privilege is available herein.

Although respondents' ability to assert the attorney-client privilege survives the analysis required by *Fisher*, the court must still determine whether the attorney-client privilege protects the information sought by the Co-trustees.

National Bankruptcy Rule 9017 expressly provides that the Federal Rules of Evidence apply in cases under the Code. Federal Rule of Evidence 501 provides that except as otherwise required, the existence of privileges is governed by (federal) common law, unless, in a civil action, state law provides the rule of decision. Although determination of property of the estate is dependent upon state law, the ultimate determination is made under federal law, 11 U.S.C. § 541. Moreover, the Co-trustees' action is based upon federal law, 11 U.S.C. § 547. Therefore, the availability of the

attorney-client privilege herein shall be determined by federal law. *See Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455 (N.D. Cal.1978).

■ A communication, made in confidence, between an attorney and his or her client in which legal advice is sought or obtained is privileged from disclosure, unless the privilege is waived. *See, e.g., United States v. Landof*, 591 F.2d 36, 38 (9th Cir.1978). The privilege is not limited to actual communication by the client, but also applies to both the substance of the attorney's and the client's communication, including, but not limited to papers prepared by the attorney if the papers tend to reveal the confidential communications. *Matter of Fischel*, 557 F.2d 209, 211 (9th Cir.1977).

Respondents Donovan and Saginaw have refused to produce unaltered time sheets asserting that the edited portions contain their notes relating to conferences held with Carter. Donovan has similarly refused to respond to deposition questions concerning the source of the retainer and the services rendered to Carter. Each refusal was based, at least in part, on the attorney-client privilege.

### C. *Contentions of Co-trustees re Privilege*

Co-trustees contend that the attorney-client privilege is either inapplicable or has been waived for a variety of reasons. First, the Co-trustees argue that the attorney-client privilege does not bar discovery of the fee arrangement between attorneys and clients. Second, the Co-trustees assert that they can waive the privilege as to pre-petition communications pursuant to the Supreme Court's recent decision in *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). Third, the Co-trustees contend that Carter waived the privilege by filing his Chapter 11 petition. Finally, the Co-trustees assert that Carter has not met the burden of proof necessary to successfully assert the privilege.

### D. *Fee Arrangement*

■ In a general sense, information concerning the fee arrangement between an attorney and client has been consistently held to be outside of the parameters of the attorney-client privilege. *See, e.g., In re Michaelson*, 511 F.2d 882 (9th Cir.), *cert. denied*, 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 469 (1975). However, information concerning the fee arrangement may be privileged where the person invoking the privilege shows a strong probability that disclosure will implicate the client in the very criminal conduct for which he sought legal advice. *United States v. Hodge & Zweig*, 548 F.2d 1347, 1353 (9th Cir.1977).

■ In a subsequent decision, *In re Ousterhoudt*, 722 F.2d 591 (9th Cir.1983) a different three-judge panel questioned the logic of the *Hodge & Zweig* decision. However, the decision did not expressly overrule the earlier decision. Moreover, in *Ousterhoudt*, the information sought was limited to the amount, form, and date(s) of payment. Here, Co-trustees seek the source of the payment as well as a description of the services rendered. Such information can constitute an unjustified intrusion into the attorney-client relationship, particularly where the revelation sought involves the ultimate motivation for contracting legal counsel. *In re Grand Jury Witness (Salas)*, 695 F.2d 359, 363 (9th Cir.1982). Therefore, the information sought by the Co-trustees is arguably protected by the attorney-client privilege.

### E. *Corporate Communications*

■ The attorney-client privilege applies to corporations seeking legal advice as well as individuals doing the same. *Upjohn Company v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Carter, personally, along with a number of his business entities filed for protection under Chapter 11. In *Weintraub, supra*, the Supreme Court held that a bankruptcy trustee may waive a corporate debtor's attorney-client privilege. *Id.* 471 U.S. at —, 105 S.Ct. at 1995–96, 85 L.Ed.2d at 384.

In *Weintraub,* the Court expressly indicated that its holding pertains solely to corporate debtors.

> Under our holding today, this power passes to the trustee because the trustee's functions are more closely analogous to those management outside of bankruptcy than are the functions of the debtor's directors. An individual, in contrast, can act for himself; there is no 'management' that controls a solvent individual's attorney-client privilege. If control over that privilege passes to a trustee, it must be under some theory different from the one we embrace in this case.

*Id.,* 471 U.S. at ——, 105 S.Ct. at 1995, 85 L.Ed.2d at 383.

Co-trustees rather than proposing a different theory, rely on their ability per *Weintraub* to waive the corporate privileges apart from Carter's individual attorney-client privilege. Cotrustees assert that Carter may not use his individual privilege to shield the corporate debtors.

Co-trustees rely on *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974) as support for their theory. In *Bellis,* the Court held that a partner in a dissolved law partnership could not refuse to produce partnership records by asserting his Fifth Amendment rights against self-incrimination. Bellis argued that his Fifth Amendment rights applied because of the small size of the partnership, which embodied little more than the personal legal practice of the individual partners. *Id.* 417 U.S. at 94–95, 94 S.Ct. at 2186–87. The court, however, held that the partnership constituted an independent entity, different from the individuals, which did not have Fifth Amendment rights. Hence, Bellis was ordered to produce the requested records.

*Bellis* is distinguishable from the instant case in that the attorney-client privilege, rather than the privilege against self-incrimination controls herein. Unlike the Fifth Amendment, the attorney-client privilege applies to the corporate debtors. Since the *Bellis* decision is based upon the nonexistence of a privilege against self-in-

crimination in favor of corporations and similar business entities, it is inapposite.

The Court in *Weintraub, supra,* indicated that allowing the trustee to waive the corporate attorney-client privilege does not render the privilege a nullity because privileges of other parties, i.e. a corporate manager, remain intact. *Id.* 471 U.S. at ——, 105 S.Ct. at 1991–92, 85 L.Ed.2d at 379.

Relatively few published decisions exist concerning the overlap of individual and corporate attorney-client privileges. Apparently, the availability of an individual's attorney-client privilege subsequent to waiver of the privilege by his corporation is a matter of first impression in this Circuit. Some courts that have decided this issue have acknowledged that the individual's privilege may prevent disclosure where the individual was clearly seeking advice concerning his personal situation. *See In re Grand Jury Investigation,* 575 F.Supp. 777, 779 (N.D. Ga.1983); *In re Grand Jury Proceedings (Jackler),* 434 F.Supp. 648, 650 (E.D. Mich.1977), *aff'd,* 570 F.2d 562 (6th Cir.1978). At least one court has limited the continued availability of the privilege to matters outside of the claimant's official corporate duties or activities. *In the Matter of Grand Jury Subpoena,* 391 F.Supp. 1029, 1034 (S.D.N.Y.1975). However, the court therein indicated that if the individual can differentiate the requested information from the corporate sphere, then the privilege would still apply. But *see In re Blier Cedar Company, Inc.,* 10 B.R. 993, 997 n.5 (Bankr.D.Me.1981).

■ All of the existing decisions pre-date *Weintraub, supra.* However, the rationale for each appears to be applicable in this context. The common thread of each holding is that an individual seeking legal advice must clearly indicate that he or she was seeking advice in his individual capacity. Unlike virtually all of the aforementioned cases, Carter apparently contacted respondents for the express purpose of obtaining legal advice regarding his personal predicament as well as his business-related problems. Consequently, a waiver of the corporate debtors' privilege by the Co-

trustees does not affect Carter's personal attorney-client privilege.[1]

### F. Waiver

■■■ Co-trustees further argue that respondents' answer put the privileged matters at-issue thereby waiving the privilege. The client, not his attorney, is the holder of the privilege; only the client can waive the privilege by voluntarily disclosing the protected information or consenting to its disclosure. *Perrignon, supra,* 77 F.R.D. at 459–60. *Accord: Kevlik v. Goldstein,* 724 F.2d 844, 850 (1st Cir.1984) (privilege belongs to client; attorney may not waive it unilaterally); *In re Grand Jury Proceedings,* 73 F.R.D. 647, 652 (M.D.Fla.1977) (attorney may neither invoke nor waive privilege if client desires otherwise). Waiver of the privilege can occur where the client voluntarily discloses confidential communication or permits his attorney to disclose the information. *United States v. Jacobs,* 322 F.Supp 1299, 1303 (C.D.Cal.1971). In the instant matter, Carter is the holder of the privilege, not respondents Donovan and Saginaw. Carter has not disclosed the information, nor has he consented to disclosure by his former attorneys. In fact, Carter has expressly instructed former counsel to assert the privilege on his behalf. Therefore, respondents' answer did not result in a waiver of the privilege.

■■■ Alternatively, respondents' answer did not waive the privilege because it did not put the allegedly privileged matters at-issue. Generally, the privilege is not waived by bringing or defending a lawsuit. *Zenith Radio Corp. v. United States,* 764 F.2d 1577, 1580 (D.C.Cir.1985); *Barr Marine Products, Inc. v. Borg-Warner Corp.,* 84 F.R.D. 631, 635 (E.D.Pa.1979). If the exact nature of the former attorney's advice is put in-issue, then the privilege is waived. *United States v. Goo,* 10 F.R.D. 332 (D.H.I.1950); *Tasby v. United States,* 504 F.2d 332 (8th Cir.1974), *cert. denied,* 419 U.S. 1125, 95 S.Ct. 811, 42 L.Ed.2d 826 (1975).

■■■ Co-trustees assert that respondents have put the nature of their services in-issue by asserting their affirmative defense that they provided valuable services for the amount received. However, it was not respondents who put this matter in-issue, it was the Co-trustees by bringing the action. The turnover action essentially asserts that attorneys are not entitled to the funds because they did not render services beneficial to the estates. By artfully pleading their claim, the Co-trustees left respondents with no other choice than to assert the aforementioned affirmative defense to protect their interest in the funds. Skillful pleadings may not render a privilege a nullity. *Chase Manhattan Bank v. Drysdale Securities Corp.,* 587 F.Supp. 57 (S.D.N.Y. 1984). Hence, assertion of the affirmative defense did not waive the attorney-client privilege.

Co-trustees assert that by filing for Chapter 11 relief, Carter waived his attorney-client privilege regarding his financial dealings with his bankruptcy attorneys. Co-trustees argue that if the attorney-client privilege is allowed to prevail, this will "emasculate the prophylactic benefit of 11 U.S.C. § 329...."

■■■ This court certainly recognizes its duty to evaluate the reasonableness of fees paid to bankruptcy counsel pursuant to section 329. However, this statutory requirement does not, per se, result in an automat-

---

**1.** In one Ninth Circuit decision, the court apparently held that an Examiner with "expanded powers" can waive the attorney-client privilege in an individual debtor's case. *In re Boileau,* 736 F.2d 503 (9th Cir.1984). In *Boileau,* the examiner sought production of four letters written to debtor and his corporation, to which debtor asserted the attorney-client privilege. The bankruptcy court ordered the letters produced, and the Ninth Circuit affirmed, holding that the Examiner effectively waived the attor-

ney-client privilege. However, the Court concentrated on the ability of the Examiner to waive the privilege of the *corporation.* In a footnote, the court indicates that the debtor failed to properly raise his personal attorney-client privilege. *Boileau, supra,* 736 F.2d at 506 n.1. Therefore, although an individual debtor was involved, the court never addressed the issue of whether a trustee or examiner with "expanded powers" can waive an individual's attorney-client privilege.

ic waiver of the attorney-client privilege regarding services rendered by and the source of the funds paid to bankruptcy counsel. The Co-trustees have not cited any cases and this court has not found any reported decisions holding that merely filing a bankruptcy results in a waiver of the attorney-client privilege concerning fees paid to and services rendered by bankruptcy counsel. Given the complete absence of such authority, the court will follow the general rule that filing suit does not result in a waiver of the privilege, see *supra*, and hold that Carter did not waive the privilege by filing his personal Chapter 11 petition.

The Rule 2016(b) statements filed by the attorneys did not waive Carter's attorney-client privilege because only the client can waive the privilege. See *supra*.

A Statement of Affairs has not been filed in either the Carters' personal case or the Carter Company case. Therefore, Carter has not expressly waived his attorney-client privilege concerning his relationship with bankruptcy counsel. An implied waiver of the privilege has been recognized where there is a subjective intent to waive the privilege and it is unfair to allow the party asserting the privilege to retain the requested information. *See, e.g., United States v. Catalanotto*, 468 F.Supp. 503, 506 (D.Ariz.1978). Although the Ninth Circuit expressly refused to consider whether subjective intent to waive the privilege is required, *Weil v. Investments/Indicators Research & Management, Inc.*, 647 F.2d 18 (9th Cir.1981), a subsequent decision by a different three-judge panel indicated that inadvertence is only one factor to consider in determining whether the privilege has been waived. See *Clady v. County of Los Angeles*, 770 F.2d 1421, 1433 (9th Cir.1985) (U.S. appeal pending).

Based upon the record before this court, Carter did not intend to waive his attorney-client privilege regarding the source of payment of the retainer given to Donovan and Saginaw and the services rendered by them. On the contrary, Carter has apparently taken every step possible to prevent disclosure of the information, including not filing a statement of affairs in his personal bankruptcy.

The attorney-client privilege, in the context of a civil proceeding is based upon a rule of evidence, not a constitutional right. *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir.1985). Consequently, the fairness of allowing the party to assert the privilege in relation to his claims or defenses is included in the determination of whether the privilege has been waived. In the instant adversary proceeding, defendants' ability to retain the $50,000 is undeniably related to their showing that they rendered services sufficient to warrant payment, and/or establishing the source of the funds. While the assertion of the privilege undoubtedly adversely affects the ability of the Co-trustees to prosecute their action, the court is inclined to believe that the nondisclosure hampers defendants as much or even more severely than the Co-trustees. Therefore, assertion of the privilege by defendants is not unfair.

Since neither of the factors pertaining to implied waiver favors the Co-trustees, the court concludes that an implied waiver has not and did not occur.

### G. Burden of Proof

Carter has not waived his attorney-client privilege, and the Co-trustees are unable to waive the privilege. Therefore, defendant's ability to assert the privilege on behalf of Carter remains intact. However, mere assertion of the privilege is inadequate; a party asserting the attorney-client privilege has the burden of proving that the privilege is applicable. *E.g. United States v. Landof, supra*, 591 F.2d at 38.

To successfully invoke the privilege, defendants must present facts demonstrating the existence of the privilege. *United States v. Osborn*, 561 F.2d 1334, 1339 (9th Cir.1977). In the instant case, defendants failed to do anything more than invoke the privilege. Hence, the Co-trustees argue that the privilege is inapplicable because it was not properly raised.

In *In re Grand Jury Subpoena Duces Tecum (Marger, Merenbach)*, 695 F.2d 363 (9th Cir.1982), the trial court denied a motion to quash because appellants merely invoked the privilege and failed to establish the applicability of the privilege. The Ninth Circuit reversed, holding that given the novelty and importance of the issues presented, the appellants would be given an opportunity to submit the subject documents to the trial court for an *in camera* inspection. In the instant case, preservation of the privilege may be of tantamount importance to Carter's criminal defense. Moreover, the procedural context in which the issue arose is somewhat less than common-place. Although defendants have technically failed to properly establish the applicability of the privilege, the court will follow the spirit of the *Grand Jury Subpoena Duces Tecum*, and allow the defendants one more opportunity to properly invoke the privilege. Defendant Donovan shall therefore appear for an *in camera* hearing regarding the unanswered deposition questions and the unexpurgated time sheets, in which such time sheets shall be produced. Said hearing shall be held on JULY 31, 1986 at 10:15 A.M. in courtroom 520 Federal Building, 34 Civic Center Plaza, Santa Ana, California before the undersigned bankruptcy judge or his law clerk.

It is so ORDERED.