**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 06-4114**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

BRANDI HAMBRICK, a/k/a Jessica Marie Long,
a/k/a Jessica Brandy Long,

Defendant - Appellant.

---

**No. 06-4271**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ERIC GIRAULT, a/k/a E,

Defendant - Appellant.

---

Appeals from the United States District Court for the Southern District of West Virginia, at Charleston. David A. Faber, Chief District Judge. (2:04-cr-00019-3; 2:04-cr-00019-4)

---

Argued: March 15, 2007          Decided: August 3, 2007

Before WILKINSON and MOTZ, Circuit Judges, and WILKINS, Senior Circuit Judge.

———————————

Affirmed in part; vacated and remanded in part by unpublished per curiam opinion.

———————————

**ARGUED:** Bruce Steven Harvey, Atlanta, Georgia; David O. Schles, Charleston, West Virginia, for Appellants. Stephanie Lou Haines, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Huntington, West Virginia, for Appellee. **ON BRIEF:** Mark Yurachek, Atlanta, Georgia, for Appellants. Charles T. Miller, United States Attorney, Charleston, West Virginia, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Eric Girault and Brandi Hambrick (collectively, "Appellants") appeal their convictions and sentences for conspiracy to distribute 100 kilograms of marijuana, see 21 U.S.C.A. § 846 (West 1999), conspiracy to launder money, see 18 U.S.C.A. § 1956(h) (West Supp. 2007), and promotion and facilitation of unlawful activity in violation of the Travel Act, see 18 U.S.C.A. § 1952(a)(3) (West 2000).[1] For the reasons set forth below, we affirm Appellants' convictions and Girault's sentence, but we vacate Hambrick's sentence and remand for resentencing.

I.

In late 2002, the Drug Enforcement Agency and the Internal Revenue Service began an investigation into the drug trafficking activities of Fred Tyson and Kevin Lee in the Charleston, West Virginia area. The investigation subsequently revealed a drug trafficking network covering a wider geographic territory.

In 1999, Tyson began distributing marijuana that he received from a supplier in Atlanta, Georgia. This relationship had ended by 2000. In 2000, Tyson received a telephone call from Girault, who stated that he knew Tyson's previous supplier and requested a meeting with Tyson. The two men met and agreed that Girault would

_____

[1]Girault was also convicted of using a communication facility to distribute 28 pounds of marijuana. See 21 U.S.C.A. § 843(b) (West 1999). He does not appeal this conviction.

3

now supply marijuana to Tyson. Under their arrangement, Girault would ship the marijuana from Atlanta in a courier-driven vehicle to Tyson in Charleston. When the marijuana shipments arrived in Charleston, Tyson and Lee would repackage the drugs into small plastic baggies for sale. Tyson would then return a portion of the sale proceeds, in vacuum-sealed packages, to Girault in Atlanta. In total, Tyson received approximately six to eight shipments, each containing 80 to 160 pounds of marijuana.

Beginning in late 2001 or early 2002, Tyson took a break from his business relationship with Girault. However, by late 2003, the two men resumed their business activities by trafficking mid-grade marijuana, a more expensive type. Using the same procedures as before, marijuana was delivered by courier from Girault in Atlanta to Tyson in Charleston on three occasions. There were quality control issues, however, with the first shipment of mid-grade marijuana (it was moldy and unmarketable). To ensure that the future shipments arrived in sale condition, Girault traveled to Charleston for the scheduled deliveries. The second and third shipments arrived as scheduled on the weekends of January 10 and January 17, 2004 in a vehicle driven by Hambrick.

At this time, law enforcement officials were conducting intense surveillance, including camera and telephone surveillance, of Tyson. On January 10, law enforcement intercepted a telephone call between Tyson and Lee confirming Girault's arrival in

4

Charleston and a meeting at a local restaurant. Lee and Girault were also captured on surveillance camera at various times throughout the delivery weekend in the parking lot of a local business used by Tyson to process the drugs. After Girault left Charleston, law enforcement intercepted telephone calls between Tyson and Lee in which they discussed future shipments, sales collection efforts, and Girault's next scheduled trip to Charleston.

As the date of the January 17th shipment grew closer, law enforcement continued to intercept telephone calls between Tyson and Girault. During one of these calls, Girault advised Tyson that Hambrick was at a Charleston hotel with the marijuana and directed Tyson to contact her for pickup details. Tyson was also instructed to give collected sales proceeds to Hambrick. Later, law enforcement observed Tyson, Lee, and Hambrick meeting in the hotel parking lot and retrieving a box from her vehicle.

On January 18, after learning that Tyson and Girault agreed to meet in an apartment owned by Tyson, law enforcement officers proceeded to arrest the members of the drug conspiracy. At the apartment, the officers found Girault, Hambrick and another individual. Hambrick was arrested, and the officers seized a suitcase containing more than $18,000 in vacuum-sealed packets, as well as $900 in cash and a pair of false driver's licenses from Hambrick's purse. The officers also seized other physical

evidence, including a work bench with marijuana residue, a knife with residue, digital scales, and a heat sealer from the business Tyson and Lee used to process the marijuana they received from Girault. Prior to trial, Tyson, Lee, and two other co-conspirators pleaded guilty to various money laundering and drug conspiracy charges. Pursuant to their plea agreements, all testified on behalf of the government.

After a five-day jury trial in which Hambrick and Girault testified in their own defense, both were found guilty on all charges. In preparation for Hambrick's sentencing on January 24, 2006, a presentence report (PSR) was prepared. At her sentencing, Hambrick objected to the calculated base offense level of 26 because it overstated the quantity of marijuana attributable to her individually. See United States Sentencing Guidelines Manual §§ 1B1.3, 2D1.1(c)(7) (2005). The district court agreed and reduced her base offense level to 16. The district court also applied a two-level enhancement because Hambrick was convicted under 18 U.S.C.A. § 1956, see id. § 2S1.1(b)(2)(B), a two-level reduction for her minor role in the offense, see id. § 3B1.2(b), and a two-level increase for obstruction of justice, see id. § 3C1.1. The resulting final offense level of 18, when combined with Hambrick's Criminal History Category of I, yielded an advisory guideline range of 27-33 months. The district court, however, concluded that Hambrick's conviction for conspiracy to distribute

6

more than 100 kilograms of marijuana required imposition of a 60-month mandatory minimum sentence, regardless of the drug quantity attributable to her individually. See 21 U.S.C.A. § 846 ("Any person who ... conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the ... conspiracy."); id. § 841(b)(1)(B)(vii) (West 1999 & Supp. 2007) (requiring imposition of 5-year minimum sentence for distribution of 100 kilograms or more of marijuana); U.S.S.G. § 5G1.1(b) ("Where the statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.").

Girault's PSR recommended attribution of 100 kilograms or more of marijuana, corresponding to a base offense level of 26, see U.S.S.G § 2D1.1(c)(7), a two-level enhancement for Girault's conviction under 18 U.S.C.A. § 1956, see id. § 2S1.1(b)(2)(B), a four-level enhancement based on Girault's role as an organizer and leader of the conspiracy, see id. § 3B1.1(a), and a two-level increase for obstruction of justice, see id. § 3C1.1. The resulting final offense level of 34, when combined with Girault's Criminal History Category of I, yielded an advisory guideline range of 151 to 188 months. The district court imposed a sentence of 151 months imprisonment.

7

II.

Appellants challenge the sufficiency of the evidence to support their convictions. A defendant challenging the sufficiency of the evidence "bears a heavy burden." United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (internal quotation marks omitted). When addressing sufficiency of the evidence challenges, we must uphold a jury verdict "if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

A.

Appellants first argue that the Government did not prove a single conspiracy to distribute marijuana as charged in the indictment, but instead proved the existence of multiple conspiracies or, alternatively, a buyer-seller relationship between Girault and Tyson. Appellants contend that this discrepancy between what was charged and the proof offered at trial resulted in a fatal variance that warrants reversal of their convictions. See United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999). We disagree.

8

The Government bears the burden of proving the single conspiracy charged in the indictment. See United States v. Hines, 717 F.2d 1481, 1489 (4th Cir. 1983). The question of "[w]hether there is a single conspiracy or multiple conspiracies depends upon the overlap of key actors, methods, and goals." United States v. Strickland, 245 F.3d 368, 385 (4th Cir. 2001) (internal quotation marks omitted). We have previously determined that "[a] single conspiracy exists where there is one overall agreement, or one general business venture." United States v. Leavis, 853 F.2d 215, 218 (4th Cir. 1988) (internal quotation marks & citation omitted).

The evidence here, viewed in the proper light, demonstrated that the conspirators shared the same objective and goal (distribution of marijuana for money), the same methods (transporting the drugs from Atlanta to Charleston in courier-driven vehicles), and the same core participants (including Girault, Tyson, and Lee). In addition, the testimony by co-conspirators Tyson, Lee, Graves, and Singleton was highly consistent and corroborated by the testimony of law enforcement officers as well as abundant physical evidence. In our view, this was more than sufficient to support the jury finding of a single conspiracy.

### B.

Appellants also challenge the sufficiency of the evidence to support their convictions for conspiracy to distribute 100

kilograms of marijuana, conspiracy to commit money laundering, and violation of the Travel Act. However, our review of the record compels us to conclude that the evidence of Appellants' guilt was abundant and that it amply supported the jury verdicts. As stated above, the co-conspirators' testimony regarding the operations of the conspiracy and its leadership was consistent and detailed. Their testimony regarding Girault's control of the shipment schedule and receipt of the sale proceeds, when presented alongside the overwhelming physical, audio, and visual evidence, proved Girault's role as manager and Hambrick's as courier in the conspiracy. Consequently, we affirm their convictions.

III.

Girault contends that the district court erred when it prohibited him from refreshing Tyson's recollection using the notes of an investigating agent who debriefed Tyson on several occasions. When Tyson admitted he could not recall certain details regarding his relationship with previous drug suppliers, Girault's counsel sought to refresh Tyson's recollection. The court ruled that counsel could not show Tyson the document because "it's not his statement. It's [the agent's] version." J.A. 258.

Whether to allow a witness' recollection to be refreshed is an evidentiary decision entrusted to the discretion of the trial court. See United States v. Cranson, 453 F.2d 123, 124 (4th Cir. 1971); see also Fed. R. Evid. 612. A trial court "by definition

10

abuses its discretion when it makes an error of law." Koon v. United States, 518 U.S. 81, 100 (1996). A witness' recollection may be refreshed with documents that are not themselves admissible in evidence, even if the witness himself did not prepare the documents. See United States v. Landof, 591 F.2d 36, 39 (9th Cir. 1978).

Although we agree that the district court erred when it prevented Girault from refreshing Tyson's recollection using the agent's notes, we conclude that the error was harmless. See Fed. R. Crim. P. 52(a). In light of the evidence described above, it is highly unlikely that Girault's inability to refresh Tyson's memory using the agent's notes affected the jury verdict. See United States v. Brooks, 111 F.3d 365, 371 (4th Cir. 1997) (holding that an evidentiary error will be found harmless if the reviewing court can conclude "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error") (internal quotation marks omitted).

IV.

Relying on his multiple conspiracy defense, Girault also claims that the district court did not properly consider the evidence of Tyson's break in drug trafficking activity when sentencing him.

11

The factual findings of the district court at sentencing are reviewed for clear error. See United States v. Uwaeme, 975 F.2d 1016, 1018 (4th Cir. 1992). Here, it is evident from the record that the district court did not err in the manner argued by Girault.[2] The district court sentenced Girault based upon an adjusted offense level of 34, increased from a base offense level of 26. To reach a base offense level of 26 under the Guidelines, the district court determined that Girault was involved in "a single continuing conspiracy" that was responsible for the distribution of 100 kilograms or more of marijuana. J.A. 731; see U.S.S.G. § 2D1.1(c)(7). This determination was not clearly erroneous. Indeed, our review of the record reveals that evidence of Girault's involvement in the single conspiracy was overwhelming. Accordingly, we affirm Girault's sentence.

---

[2]We note that Girault asserts a Sixth Amendment error in his reply brief. See Apprendi v. New Jersey, 530 U.S. 466, 490 (2000); United States v. Collins, 415 F.3d 304, 314 (4th Cir. 2005). However, an issue first argued in a reply brief is not properly before us. See Cavallo v. Star Enter., 100 F.3d 1150, 1152 n.2 (4th Cir. 1996). But even if Girault had properly raised such a claim, we would decline to notice it. See United States v. Promise, 255 F.3d 150, 161-64 (4th Cir. 2001) (en banc) (declining to recognize plain error when the district judge violated the Sixth Amendment by making drug weight findings because the evidence was overwhelming and "had the indictment included the [drug quantity], the jury would have found [the defendant] guilty beyond a reasonable doubt"); United States v. Hadden, 475 F.3d 652, 670-72 (4th Cir. 2007).

12

V.

Last, Hambrick asserts that she was sentenced in violation of United States v. Collins, 415 F.3d 304, 314 (4th Cir. 2005) (holding that for sentencing purposes in a drug conspiracy case the jury must determine the specific amount of drugs attributable to each individual defendant in order to set a threshold drug quantity under § 841(b)). The Government correctly concedes that the district court erred in applying the mandatory minimum sentence of 60 months based upon the larger quantity of drugs attributable to the entire conspiracy rather than the quantity attributable to Hambrick individually. Further, the record shows that the issue of Hambrick's individual drug quantity culpability was not submitted to the jury. Accordingly, we vacate Hambrick's sentence and remand for resentencing consistent with Collins. Id. at 315 (stating remedy).

VI.

For the reasons set forth above, we affirm Appellants' convictions and Girault's sentence. We vacate Hambrick's sentence and remand for resentencing.

AFFIRMED IN PART;
VACATED AND REMANDED IN PART

13