**In re J.M.V., INC. trading as J.M.V. Provisions, Debtor.**

**Bankruptcy No. 86–03256F.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 16, 1988.

Nathalie D. Martin, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for trustee, Gabriel Basch.

James A. Backstrom, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for Michael Vetri.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

This is the trustee's motion to compel deposition testimony of Michael Vetri, president and sole shareholder of the debtor corporation, over Mr. Vetri's invocation of his Fifth Amendment privilege. At deposition pursuant to Bankr.Rule 2004, on advice of counsel, Mr. Vetri refused to answer every question asked of him about his role in the debtor corporation and about corporate activities on the ground that his answers may tend to incriminate him. The trustee's motion to compel is founded solely upon his belief that Mr. Vetri has not properly demonstrated that he has reasonable cause to fear incrimination based on his responses to the questions asked.[1]

### I.

Any discussion of the proper scope of a witness's Fifth Amendment privilege must begin with consideration of *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). In that decision the Supreme Court analyzed a trial court's responsibilities upon invocation by a witness of the privilege against self-incrimination.

As a threshold matter *Hoffman* makes clear that some inquiry is necessary:

The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself —his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, *Rogers v. United States*, 340 U.S.

---

1. The trustee does not argue that the privilege has been waived, e.g., by any papers heretofore filed in this case. *See generally* Cleary, *McCormick on Evidence* § 140 at 345 (3rd ed. 1984).

367 [71 S.Ct. 438, 95 L.Ed. 344] (1951), and to require him to answer if "it clearly appears to the court that he is mistaken." *Temple v. Commonwealth*, 75 Va. 892, 899 (1881).

*Hoffman*, 341 U.S. at 486, 71 S.Ct. at 818. *See also, e.g., Donovan v. Spadea*, 757 F.2d 74, 78 (3rd Cir.1985). The witness must have "reasonable cause to apprehend danger from a direct answer." *Hoffman*, 341 U.S. at 486, 71 S.Ct. at 818.

It is the nature of the inquiry into the witness's reasons for apprehending danger which has presented a difficult problem for courts, because of the tricky balance between a necessary investigation of the circumstances surrounding a claim of privilege and, by this investigation, the process of forcing a witness to surrender some of the protection afforded by the privilege. As stated more eloquently by the Supreme Court:

> However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee.

*Hoffman*, 341 U.S. at 486, 71 S.Ct. at 818.

It is clear from *Hoffman* and the many cases applying it, however, that a witness has some minimal burden to justify invocation of the privilege. *Matter of Grand Jury Empanelled Feb. 14, 1978*, 603 F.2d 469, 477 (3rd Cir.1979); *In re U.S. Hoffman Can Corp.*, 373 F.2d 622, 628 (3rd Cir.1967). *See In re Connelly*, 59 B.R. 421, 433–34 (Bankr.N.D.Ill.1986); Cleary, *McCormick on Evidence* § 139 at 342 (3rd ed. 1984) *quoting United States v. Weisman*, 111 F.2d 260, 261–62 (2d Cir.1940):

> [T]he traditional view has been that the witness, in order to avoid liability for contempt on the basis of his refusal to answer, may be required to provide suffi-

cient information on which the court may find that a real danger of incrimination exists. This limited requirement of disclosure as a condition of invoking the privilege clearly poses some danger to the interests the privilege is designed to protect. The classic defense of it was stated by Judge Learned Hand: "The ... questions were on their face innocent, and it lay upon the defendant to show that the answers might criminate him.... Obviously a witness may not be compelled to do more than show that the answer is likely to be dangerous to him, else he would be forced to disclose those very facts which the privilege protects. Logically, indeed, he is boxed in a paradox, for he must prove the criminatory character of what it is his privilege to protect because it is criminatory. The only practicable solution is to be content with the door's being set a little ajar, and while at times this no doubt partially destroys the privilege ... nothing better is available.

■ Thus it is clear in the instant matter that Vetri has some obligation to make a minimal showing that he has "reasonable cause to apprehend danger of self-incrimination" from direct answers to the questions asked. *See In re Litton*, 74 B.R. 557, 559 (Bankr.C.D.Ill.1987); *In re Connelly*, 59 B.R. at 434. A trial judge in appraising the claim of privilege " 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.' " *Hoffman*, 341 U.S. at 489, 71 S.Ct. at 819 *quoting Ex parte Irvine*, 74 F. 954, 960 (C.C.S.D.Ohio 1896). Unlike the trial judge in an ongoing grand jury investigation or criminal proceeding, however, I have no particular knowledge of the facts or circumstances of the J.M.V. bankruptcy which would make me aware of any potential for criminal liability.[2] *See In re Morganroth*, 718 F.2d 161, 167–68 (6th

---

**2.** The only exposure which I have had to this case other than discovery disputes and procedural matters involved an adversary proceeding by which the trustee attempted to recover an account receivable from the New York Bagel Bakery. That case involved sale by the debtor/plaintiff of "mexican midget raisins" to the

defendant for use in raisin bagels. Nothing about the circumstances of that case were suggestive of criminal activity by the debtor or its principal. *See In re J.M.V., Inc.*, Bankr. No. 86–03256G, Adv. No. 87–0711F *unpublished mem.* (Bankr.E.D.Pa. October 29, 1987).

Cir.1983). The witness thus has an obligation to come forward with some evidence or argument to establish grounds for the privilege.[3]

■ The question to which Vetri's burden applies must be rather delicately framed. On the one hand the witness must show a real danger of incrimination and not "a mere imaginary, remote or speculative possibility of prosection." *Morganroth*, 718 F.2d at 167 *citing United States v. Apfelbaum*, 445 U.S. 115, 124, 100 S.Ct. 948, 953, 63 L.Ed.2d 250 (1980). On the other hand, "to sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman*, 341 U.S. at 486–487, 71 S.Ct. at 818.[4] To compel a response it must be " '*perfectly clear*, from a careful consideration of all the circumstances in the case, that the witness is mistaken and that the answer[s] *cannot possibly* have such tendency' to incriminate." *Hoffman*, 341 U.S. at 488, 71 S.Ct. at 819 *citing Temple v. Commonwealth*, 75 Va. 892 (1881) (emphasis in original). *See also, e.g., United States v. Yu-*

rasovich, 580 F.2d 1212, 1216 (3rd Cir. 1978). Additionally, "[t]he privilege afforded not only extends to answers that would in themselves support a conviction ... but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a ... crime." *Hoffman*, 341 U.S. at 479, 71 S.Ct. at 815. *In re Yurasovich*, 580 F.2d at 1215.

In view of these legal precepts, I must evaluate the questions asked of Mr. Vetri at deposition taken together with the arguments which counsel have presented.[5]

## II.

At deposition, Mr. Vetri supplied only his name, address and telephone number. In response to every other question asked of him by counsel to the trustee, Mr. Vetri invoked his Fifth Amendment privilege.[6]

■ As discussed above, in order to resolve this matter the actual questions asked of the witness must be evaluated in the context of the explanation offered for invocation of the privilege to determine whether potential answers to those questions cannot possibly incriminate Mr. Vetri. Therefore, without including here the entire deposition transcript, I have excerpted

**3.** Initially, here, Vetri attempted to meet this burden with an *ex parte, in camera* submission. Upon objection by the trustee to this procedure, I declined to consider or read the brief submitted *in camera* and returned it to Vetri's counsel. *See Matter of U.S. Hoffman Can Corp.*, 373 F.2d 622, 628–29 (3rd Cir.1967). *But see In re Litton, In re Connelly. Hoffman* and its progeny clearly contemplate a process by which a witness's right to claim the privilege is decided within the context of an adversary system. Vetri has subsequently filed a brief containing argument on his right to claim privilege which was served upon opposing counsel.

**4.** It must be clear that the "injurious disclosure" tends to incriminate the witness himself and not the corporation of which he is a principal. Corporate entities have no privilege against self-incrimination. *See, e.g., Braswell v. United States*, — U.S. —, 108 S.Ct. 2284, 63 L.Ed.2d 98 (1988); *Bellis v. United States*, 417 U.S. 85, 88, 94 S.Ct. 2179, 2183, 40 L.Ed.2d 678 (1974). *Matter of Grand Jury Empanelled Feb. 14, 1978*, 603 F.2d 469, 476 (3rd Cir.1979).

**5.** No evidence was offered by either party other than the deposition transcript. The privilege may be sustained solely upon argument of coun-

sel. *Brock v. Gerace*, 110 F.R.D. 58, 65 (D.N.J. 1986). *See also United States v. Coffey*, 198 F.2d 438, 440 (3rd Cir.1952).

**6.** "Blanket invocations" of the Fifth Amendment have been held improper. *National Life Insurance Co. v. Hartford Accident & Indemnity Co.*, 615 F.2d 595, 598–599 (3rd Cir.1980); *In re Commonwealth Financial Corp.*, 288 F.Supp. 786 (E.D.Pa.1968), *aff'd* 408 F.2d 640 (3rd Cir.) *cert. denied*, 395 U.S. 961, 89 S.Ct. 2104, 23 L.Ed.2d 748 (1969). *See also United States v. Edelson*, 604 F.2d 232 (3rd Cir.1979). Here, at least, the witness listened to each question before invoking his privilege. Upon inquiry by counsel to the trustee, Mr. Vetri's counsel stated "I'm prepared to advise him not to answer questions concerning the matters that you have raised. If they continue along this line, I'm prepared to ... advise him to continue to assert his Fifth Amendment privilege." (Notes of Deposition at p. 8.) Given counsel's presentation of support for this position by argument, there has been no impermissible "blanket invocation" of the privilege.

each inquiry in response to which Mr. Vetri invoked his Fifth Amendment privilege.

Q. Mr. Vetri, what is your occupation?

Q. What was your role in the business of J.M.V. at the time of the bankruptcy?

Q. Were you a corporate officer of J.M.V.?

Q. Did you ever own any stock in the debtor corporation?

Q. What do you mean it might tend to incriminate you? [7]

Q. Were you ever a corporate officer or director of the debtor corporation?

Q. Were you the sole shareholder of the debtor corporation?

Q. What was the business that J.M.V. was in?

Q. How did your role in the business of J.M.V. differ in the early years of the business compared to your role at the time of the bankruptcy?

Q. Did you ever take part in any corporate board meetings of J.M.V., Inc.?

Q. Did you ever take part in any corporate shareholder meetings of J.M.V., Incorporated?

Q. Have you turned over all of the corporate records of the debtor corporation to the trustee?

Q. Do you know of any assets of J.M.V. which were not listed on the J.M.V. schedules?

Q. What was the relationship between Vito's Pizza and J.M.V., Incorporated at the time of the bankruptcy?

Q. What was the relationship between those two businesses during the two years prior to the bankruptcy?

Q. What type of banking facilities did J.M.V. use during the year prior to the bankruptcy proceedings?

Q. Are you a creditor of the debtor corporation?

Q. Do you know where the corporate minute books of J.M.V. are located?

Q. I'm handing you what has been marked as TJ-1.

Do you recognize that document? [8]

Q. Mr. Vetri, were you in charge of what might be generally construed to be the inside functions or the outside functions? Meaning, to clarify my own question, were you in charge of the customer contact or the vender contact in the environment of J.M.V.?

■ In his supplemental memorandum of law, Vetri contends that answers to these questions could implicate him or furnish a link in the chain of evidence to implicate him in violations of the mail, wire and bank fraud statutes. 18 U.S.C. §§ 1341, 1343 and 1344. Additionally, he claims the questions could lead to proof of violation of 18 U.S.C. § 152 which proscribes concealment of assets from a trustee in any case under Title 11.[9]

### III.

■ Most obviously, on the circumstances presented here, Mr. Vetri's privilege applies to questions concerning Vetri's personal knowledge of the existence or non-existence of corporate assets. Concealment of assets from a bankruptcy trustee has long been actionable as a federal crime. *See, e.g., United States v. Schireson,* 116 F.2d 881 (3rd Cir.1940). Of the questions asked, answers to the following are thus clearly within the scope of the privilege:

▲ Do you know of any assets of J.M.V. which were not listed on the J.M.V. schedules?

▲ Have you turned over all of the corporate records of the debtor corporation to the trustee?

■ Somewhat more complex are the implications of the question—Do you know

---

7. Vetri responded to this question by invoking the privilege.

8. TJ-1 was not identified in the record and so cannot be addressed in this memorandum.

9. Contrary to the position taken by counsel to Vetri in his initial submission, the trustee has

no obligation to seek immunity for Vetri pursuant to 11 U.S.C. § 344 and 18 U.S.C. § 6003 as a prerequisite to a motion to compel responses of Mr. Vetri. *See generally* 18 U.S.C. § 6001 *et seq; Pillsbury Co. v. Conboy,* 459 U.S. 248, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983); *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

where the corporate minute books of J.M. V. are located? The debtor and the defendant may not be able to resist efforts by the trustee to obtain corporate books and records by invocation of the Fifth Amendment. *See Braswell v. United States*, — U.S. —, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988). *See also Doe v. United States*, — U.S. —, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988). Here, however, the issue does not involve subpoena of records, but rather a testimonial response to a question which, if answered, suggests some role of the deponent in maintenance of the records. That testimonial disclosure is protected by the Fifth Amendment. *See Braswell v. United States*, 108 S.Ct. at 2296 (dissenting opinion of Justice Kennedy). *Compare Doe v. United States* (signature on consent form not testimonial in nature). Since the records may contain evidence that assets were concealed, Vetri's testimony as to knowledge about the books and records might form a link in the chain of evidence needed to prosecute him. *See Hoffman.*

 As to the other questions, however, Vetri has not met his minimal burden. Simply identifying crimes which on their face have no apparent connection to the questions asked is insufficient to carry the burden necessary to sustain the privilege. *See Donovan v. Spadea; U.S. Hoffman Can Corp*. In the context of the case as it has been presented, no apparent connection exists between potential answers to questions such as "what is your occupation?" and "did you ever take part in any corporate board meetings?" and the crimes of mail, wire or bank fraud and/or concealment of assets from the trustee. Thus, answers to those questions and others like them may be compelled.

I recognize that the deposition questions which have been asked probably do not constitute the entire range of questions to which the trustee may seek answers. Most likely, the trustee will be interested in following up upon any compelled responses—and additional disputes will arise. I urge the parties to make every attempt at self-regulation in accordance with this memorandum.[10] The trustee may also recognize that those questions which I will order the deponent to answer are those which have the least investigative utility. It appears likely, in general, that the questions to which the trustee most ardently desires responses will be subject to the privilege and that alternative investigative methods will be necessary.[11] Under the circumstances, the trustee will have to decide whether further deposition testimony by Mr. Vetri is useful. *See National Life Insurance Co. v. Hartford Accident & Indemnity Co.*, 615 F.2d at 600 (separate opinion of Judge Gibbons).

An appropriate order will be entered.

### ORDER

AND NOW, this 16 day of September, 1988, upon consideration of the trustee's motion to compel deposition testimony of Michael Vetri over invocation of his Fifth Amendment privilege, upon review of the deposition transcript and the arguments of counsel; and for the reasons set forth in the accompanying memorandum,

it is hereby ORDERED that the motion is GRANTED IN PART and DENIED IN PART. Mr. Vetri is directed to answer all questions asked at his deposition with the exception of the following:

▲ Do you know of any assets of J.M.V. which were not listed on the J.M.V. schedules?

▲ Have you turned over all of the corporate records of the debtor corporation to the trustee?

▲ Do you know where the corporate minute books of J.M.V. are located?

**10.** I leave open the possibility of future fee shifting if disputes are presented which do not appear to have merit.

**11.** I can offer no advisory opinion, however, about any questions which have not yet been asked of the witness.