**UNITED STATES of America**

v.

**Jose CEDENO.**

**Criminal Action No. 06–CR–00701–1.**

United States District Court,
E.D. Pennsylvania.

July 10, 2007.

John M. Gallagher, U.S. Attorney's Office, Philadelphia, PA, for United States of America.

James M. Polyak, Reading, PA, Marc S. Fisher, Worth Law Offices, Gavin P. Holihan, Allentown, PA, Robert J. O'Shea, Jr., Kenney/O'Shea, LLP, Carlos A. Martir, Martir & Assoc, Philadelphia, PA, Robert E. Sletvold, Lauer & Sletvold P.C., Easton, PA, for Defendants, Jose Cedeno, Juan Minier, Eduardo Jimenez, Hilario Tamarez–Canario, Alejandro Martinez–Bassora and Freddy Isaac Gell.

## MEMORANDUM OPINION AND ORDER

GOLDEN, District Judge.

Before the Court is the government's Motion for a Trial Subpoena which would compel attorney John P. Karoly, Jr., counsel for defendant Jose Cedeno, to disclose the following material:

1. All journals, ledgers, receipts, deposited items, deposit tickets, correspondence, bank statements, checks, drafts, money orders and other accounting records reflecting payments or receipts of any type, whether in cash, by check or other instrument, or through other real or personal property, received from or on behalf of Jose Cedeno and Juan Minier, individually and collectively, or on their behalf;

2. Each retainer agreement between John P. Karoly, Jose Cedeno, and Juan Minier, individually and collectively, or on their behalf;

3. An affidavit from attorney John P. Karoly containing (a) all information known to counsel concerning the direct and indirect source of any fees (herein "fee sources") received (or expected to be received) in connection with this case; and (b) a description of any and all relationships between defense counsel and any and all fee sources, including a statement as to whether defense counsel has ever had an attorney-client relation with any such fee sources.

For the foregoing reasons, the government's motion is granted in part and denied in part. Attorney Karoly is directed to produce a copy of any retainer and fee agreements between he and defendants Minier, Cedeno, individually and collectively, and the third parties who have funded or borrowed funds for their defense. Attorney Karoly will also produce a copy of the affidavit describing his retention in this matter, which was originally filed under seal with this Court on May 21, 2007.

Attorney Karoly is not required to submit to the government the exhibits attached to his affidavit, other than the fee agreements and acknowledgments signed by his clients. He is not required to disclose information, other than the identity of clients, related to his representation of clients in civil or administrative matters. He may redact from his affidavit any information that reveals the nature of his representation of clients in civil or administrative matters.

The government's motion is denied as to its request for all journals, ledgers, and receipts, and other documents described on page one, number one of this memorandum. After review of attorney Karoly's affidavit and fee agreements, the government may renew its motion. If necessary, the Court will schedule *in camera* review of each piece of requested material, to guard against disclosures violative of the attorney-client privilege.

### Factual and Procedural Background

Defendants Jose Cedeno and Juan Minier were indicted on December 12, 2006 as members of an alleged conspiracy to distribute large quantities of cocaine. At a December 13, 2006 detention hearing, attorney John Karoly appeared before Magistrate Judge Arnold Rapoport as counsel for Cedeno. During this hearing, attorney Karoly indicated that he had also been retained by Cedeno's co-defendant Juan Minier. Shortly thereafter, the government sent attorney Karoly a letter indicating its opposition to his intention to represent two defendants, and requesting a voluntary accounting of the source of fees paid to him on behalf of Cedeno and Minier. Attorney Karoly responded by refusing to account for his fees, but indicating that he would represent only Cede-

no.[1] He maintains that Cedeno and Minier were never represented jointly by him, and he never entered an appearance on Minier's behalf.

The government contends that cumulatively, Cedeno and Minier were in possession of over $1.3 million at the time of their arrest. The government also contends that Cedeno and Minier indicated via sworn affidavit that they did not have sufficient resources to retain counsel. In contrast, attorney Karoly maintains that Cedeno never exerted conscious control over vast sums of money. Furthermore, Karoly contends that the financial affidavits were completed by an unknown third party, and that his client has limited English proficiency.

The government asserts that it needs the requested information to determine:

1. the existence of unexplained wealth;

2. whether fees were derived from the proceeds of drug transactions;

3. whether the fees are being provided by other accomplices to the drug distribution conspiracy;

4. and whether the fees were derived from income that was otherwise lawfully obtained.

In response, attorney Karoly concedes that Cedeno and Minier's fees were paid by unnamed parties, one of whom is his client. He argues that the government's subpoena:

1. violates attorney-client privilege;

2. does not meet the four-pronged test of Federal Rule of Criminal Procedure 17(c), which outlines requirements for a pretrial subpoena;

3. violates his client's rights to counsel under the Fifth and Sixth Amendments.

To resolve this issue, the Court held oral argument on May 8, 2007. The Court then ordered attorney Karoly to file under seal an affidavit regarding the fee agreements between he, Cedeno, Minier, and any third party benefactor. The Court instructed attorney Karoly to describe "what specific confidential communication between attorney and client, beyond the fact of retention, may be exposed if the Court grants the Government's motion." Attorney Karoly complied with the motion and filed the affidavit under seal on May 21, 2007.

Briefly, the affidavit indicated that the wives of defendants Cedeno and Minier had contacted attorney Karoly to explore representation for their husbands. Both of the defendants' wives reported to attorney Karoly that they could fund their husbands' defense by borrowing money from family members. Moreover, Cedeno's wife continues to work with attorney Karoly.

### *Meeting the Requirements of Federal Rule of Criminal Procedure 17(c)*

■ Before turning to the question of attorney-client privilege in this matter, the Court will address attorney Karoly's argument that the government's motion does not meet the four-prong test for a pre-trial subpoena, as outlined in *U.S. v. Nixon*, 418 U.S. 683, 700, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974):

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend un-

---

**1.** Since then, attorney Gavin Holihan was appointed to represent Minier, and Miner later hired attorney Erv D. McClain. According to

his affidavit, attorney Karoly received a sum of money from defendant Minier's wife and family as a retainer.

reasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

The first prong of the *Nixon* test, and attorney Karoly's corresponding arguments, apply primarily to the ledgers, receipts, and other business documents requested by the government. Attorney Karoly argued that these materials could not be authenticated and considered "evidentiary" without his testimony, which could not be compelled. Because the Court has denied the portion of the government's motion that relates to those documents, it is not necessary to resolve that issue now.

■ As to the other three factors required by the *Nixon* test, the government's motion satisfies the same. Addressing the second *Nixon* prong, which assesses whether documents are "otherwise procurable," attorney Karoly argues that the government has hundreds of hours of conversations procured by wiretaps, and that through diligent excavation of these tapes the government might discover information about the relationship between Cedeno, Minier, and any benefactors. As a result, he argues, the information is "otherwise procurable" and thus the government fails to meet the *Nixon* test. However, the text of Rule 17(c), and the explanation of the rule in *Nixon*, clearly state that *documents*, not the ideas contained within them, must not be otherwise procurable. Therefore, the contents of the government's audio evidence are immaterial to the validity of the subpoena.

■ Prong three of the *Nixon* test requires a party to show the need to acquire the documents to prepare for trial.

In his brief, attorney Karoly overemphasizes the idea that the subpoenaed material must be central to the government's case for a subpoena to be appropriate under Rule 17(c). According to the notes of the advisory committee which drafted the rule, the main goal of Rule 17(c) is to allow counsel to inspect documents before trial in order to determine if they intended to use them at all. *Nixon*, 418 U.S. at 700 at n. 11, 94 S.Ct. 3090. The thrust of the Rule was therefore preventing delays at trial, not creating an additional test of the relevance of evidence. *Id.*

■ Moreover, the government discusses, at some length, the potential for a conflict of interest between Cedeno, Minier and their benefactors, which would certainly be central to this case. The Supreme Court has directed district courts to probe potential conflicts in cases in which an employer pays an employee's legal bills. *Wood v. Georgia*, 450 U.S. 261, 268–69, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981). A conflict of interest between a benefactor and the recipient of legal services can lead to the violation of a defendant's due process rights. *Id.* at 272, 101 S.Ct. 1097. Under *Wood*, the Court and the government have a significant interest in detecting and addressing a potential conflict of interest before trial, as a conflict could render a judgment invalid.[2]

Finally, given the obvious potential for a conflict of interest between two co-defendants in a drug conspiracy case and an unknown benefactor, attorney Karoly's characterization of the government's request as a fishing expedition, and thus violative of prong four of the *Nixon* test, rings hollow. Thus, the Court concludes

---

**2.** *Wood* also disposes of attorney Karoly's argument that the Government's request is violative of Cedeno's right to the counsel of his choice. The right to counsel includes the right to representation that is free from con-

flicts of interest. *Wood,* 450 U.S. at 271, 101 S.Ct. 1097. The government's subpoena can thus be interpreted as protecting, rather than disrupting, defendant's rights.

that the government's motion meets the requirements of the *Nixon* test and Federal Rule of Criminal Procedure 17(c) as to the fee agreements and affidavit now ordered to be disclosed.

### Attorney–Client Privilege

■■■■ The Court also concludes that the fee agreements between attorney Karoly, the defendants, and their wives are not protected by the attorney-client privilege. The burden of proving that the attorney-client privilege applies to specific information falls to the party asserting the privilege. *In re: Grand Jury (Markowitz)*, 603 F.2d 469, 474 (3d Cir.1979). Generally, the fee agreement between a client and an attorney is not privileged. *In re: Grand Jury Investigation (Tinari)*, 631 F.2d 17, 19 (3d Cir.1980). In most cases, the privilege does not shield client identity or the fact of retention. *Id.*

The Third Circuit has explained that the attorney-client privilege exists to protect confidential communications between a lawyer and a client; in most cases, the disclosure of a fee arrangement or a client's identity does not disclose the substance of any confidences. *In re: Grand Jury (Markowitz)*, 603 F.2d at 473. The information "might be protected . . . if the person asserting the privilege can show a strong probability that disclosure of the fact of retention or of the details of a fee arrangement would implicate the client in the very criminal activity for which legal advice is sought." *In re: Grand Jury (Tinari)*, 631 F.2d at 19 (internal citations omitted). The Court's role is to ensure that attorneys and clients are free to engage in frank discussions, without fear of compromise. *U.S. v. Liebman*, 742 F.2d 807, 810 (3d Cir.1984) (internal citations omitted).

For example, the Third Circuit has recognized an exception to the general rule in favor of disclosure when "so much of the actual communication had already been established, that to disclose the client's name would disclose the essence of a confidential communication . . ." *Liebman*, 742 F.2d at 809 (internal citations omitted). Thus, in *Liebman*, the Circuit court reversed an order to a law firm to comply with an I.R.S. summons requesting the names of all clients who "paid fees over a three-year period in connection with the acquisition of certain tax shelters." *Id.* at 808. In disclosing its clients' names the firm would, as a practical matter, be disclosing the content of its specific tax advice to the clients and providing "all there is to know" about a confidential discussion between attorney and client. *Id.* at 810.

The Third Circuit reached the opposite result in *Markowitz*, holding that attorney-client privilege would not prevent a lawyer from disclosing a client's name only because the client might be subject to later prosecution. 603 F.2d at 473 n. 4. In *Markowitz*, the attorney represented a client who, allegedly, had an ownership interest in a boat seized with 42,000 pounds of hashish on board. *Id.* at 472. The Third Circuit held that attorney-client privilege shielded the client only from exposure of confidential communications, not from the possibility of police scrutiny. *Id.* at 473 at n. 4.

■■■■ The existence of an unknown third party benefactor paying a defendant's legal bills does not by itself create an exception to the general rule in favor of disclosure. As one court noted, "the payment of another's legal fees . . . should not be accorded more protection against disclosure under the attorney-client privilege than a payment directly to the person for his or her retaining a lawyer." *In re: Shargel*, 742 F.2d 61, 64 (2d Cir.1984).

In the instant case, after review of the affidavit from attorney Karoly and the other materials submitted, the Court concludes that by disclosing the identities of

the defendants' benefactors and their fee agreements, no confidential communication between attorney Karoly and his clients would be disclosed. The mere fact of consultation with a lawyer does not implicate the defendants' families in any crime; as one court put it, "[s]eeking legal advice is as much a first step in demonstrating innocence or the non-existence of a problem as it is an admission of guilt." *Id.* at 64 at n. 3.

Nothing contained in the submitted material discloses, or even addresses, confidential communications related to this case. The unsurprising revelation that the defendants' family members have invested in their defense does not in any way reveal the nature of the advice provide by the attorney, or the content of any discussions with the defendants. The Court does not see how these disclosures would prevent the defendants or their family members from engaging in frank discussions with their attorney about the pending criminal case, or any civil or administrative matter.

In fact, if anything, the disclosure of the material would seem to weaken the government's position. If the government is looking for further evidence of a conspiracy between Cedeno and Minier, for the identity of a kingpin benefactor, or for evidence of unexplained wealth, it will find none in the submitted materials.[3]

Attorney Karoly argues that the Third Circuit has suggested that it might not permit disclosure of an unknown benefactor's identity if the benefactor had an attorney-client relationship with the same lawyer retained by the beneficiary. *In re: Grand Jury (Tinari)*, 631 F.2d at 19. This argument fails for three reasons. First, the statement attorney Karoly cites to support this proposition is dicta in an opinion authorizing the disclosure of a benefactor's identity. Second, even taking the statement as controlling, it would not change the outcome in this case. The Circuit court stated that it would make a disclosure of the benefactor's identity because it "would not disrupt any other attorney-client relationship." *Id.* at 19. There is no reason why the disclosure of the fee agreement would be disruptive to the attorney-client relationship between attorney Karoly and defendant Cedeno's wife; no confidential communication between the two of them has been revealed.[4]

Third and finally, the case on which the Third Circuit relied to support that statement, *In re: Grand Jury (Jones)*, 517 F.2d 666 (5th Cir.1980), is inapposite here. In *the Jones* case, the government sought the identity of benefactors who paid the legal fees for the members of a marijuana distribution ring. *Id.* at 674. The benefactors were clients of the same attorneys who represented named clients in a drug case. *Id.* at 669. The government sought the information to further prosecution of the benefactors for tax evasion, intending to use the fee payment information as proof that the benefactors had significant, unreported income. *Id.* Noting that the government had "but one purpose" for

---

3. The Court notes that efforts to use client identity or benefactor identity to lead to just such evidence have been endorsed by courts of appeal. *See, e.g., In re: Grand Jury Proceedings*, 42 F.3d 876, 878 (4th Cir.1994); *In re: Grand Jury Served upon Doe*, 781 F.2d 238, 247–48 (2d Cir.1986).

4. In his sealed affidavit, attorney Karoly disclosed to the Court the nature of his representation of defendant Cedeno's wife. The Court will not presently compel him to share the details of his representation, which are described in exhibits attached to his affidavit, with the government. The Court notes, however, that because details about attorney Karoly's representation of Cedeno's wife cannot be intuited from the revelation of her identity alone, the disclosure of those details to the Court under seal does not effect the Court's opinion. *In re: Shargel*, 742 F.2d at 64.

asking for disclosure of the benefactors' names, and that the benefactors had a "strong independent motive" to seek legal advice and to presume that the advice would remain confidential, the Fifth Circuit reversed an order to disclose the fee agreement between the benefactors and the attorneys. *Id.* at 674–75 (internal citations omitted). In the instant case, however, the defendants' benefactors did not have a "strong independent motive" to seek attorney Karoly's advice. Rather, they came to him solely to address the indictment against their husbands. The disclosure of their names reveals nothing about the content of their discussions with their attorney.

Because the identity of attorney Karoly's clients, their benefactors, and their fee agreements are not cloaked in attorney-client privilege, the Court will grant the government's motion for a trial subpoena in part. An appropriate order follows.

### ORDER

AND NOW, this 10th day of July, 2007, upon review of the government's Motion for Trial Subpoena (Document # 70) and the response thereto, and after oral argument, it is hereby ORDERED that the government's Motion is GRANTED in part and DENIED in part. It is further ORDERED that:

1. Within five (5) days, attorney John P. Karoly, Jr. shall provide to the government copies of any retainer and fee agreements, between he and defendants Minier, Cedeno, individually and collectively, and the third parties who have funded or borrowed funds for their defense, including any letters regarding attorney retention and the payment of fees, and any invoices and acknowledgments signed by clients.

2. Within five days, attorney Karoly shall provide the government with a copy of the affidavit filed under seal with the Court on May 21, 2007. Attorney Karoly need not provide the government with copies of attached exhibits that relate to his representation of clients in civil or administrative matters. He may redact from his affidavit any information that reveals the nature of his representation of clients in civil or administrative matters.

3. The government's motion is DENIED as to its request for all journals, ledgers, receipts, deposited items, deposit tickets, correspondence, bank statements, checks, drafts, money orders and other accounting records reflecting payments or receipts of any type, whether in cash, by check or other instrument, or through other real or personal property, received from or on behalf of Jose Cedeno and Juan Minier, individually and collectively, or on their behalf. The government may renew its motion and request these documents after review of the disclosed fee agreements and related materials.